UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON

CRIMINAL CASE NO. 20-2-DLB-CJS

UNITED STATES OF AMERICA                                                    PLAINTIFF

vs.                               **REPORT AND RECOMMENDATION**

LAVONE GANITHUS DIXON, JR.
and
TIFFANY THOMPSON                                                           DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendant Lavone Ganithus Dixon, Jr's Motion to Suppress (R. 53), which Motion co-Defendant Tiffany Thompson has joined (R. 54).[1] The Government responded to the Motion to Suppress (R. 67), and Dixon replied (R. 72). Thereafter, the parties were directed to address the standard to be applied in determining whether an evidentiary hearing should be held. (R. 74). Dixon and the Government have filed supplemental briefs on this issue. (R. 78; R. 82). The motion is now ripe for consideration and preparation of a Report and Recommendation.[2] *See* 28 U.S.C. § 636(b)(1)(B). For the reasons below, it will be recommended that the Motion to Suppress be denied.

I.   BACKGROUND

Dixon has been indicted for (1) knowingly and intentionally possessing with the intent to distribute fifty grams or more of methamphetamine, a Schedule II controlled substance, in

---

[1] Although, for simplicity's sake, this Order refers to the pending motion as Dixon's Motion to Suppress, the Order applies equally to Thompson.

[2] *See United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007) (citing *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (characterizing a motion to suppress as dispositive)).

violation of 21 U.S.C. § 841(a)(1); and (2) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (R. 61). Thompson has been indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (*Id.*). At least part of the evidence that the Government will likely use to prove these alleged crimes was obtained from a state-court-issued search warrant of a house in Richmond, Kentucky that Dixon and Thompson purportedly shared together. (*See* R. 53-4). The validity of the search warrant is the target of Dixon's Motion to Suppress.

While a defendant will typically challenge a search warrant on the basis that the affidavit in support of the warrant failed to establish probable cause, this case is atypical. Here, Dixon's challenge is not directly aimed at the probable cause allegations in support of the warrant, it is aimed at the *validity* of the search warrant itself.[3] Specifically, Dixon questions whether law enforcement in fact obtained a valid warrant *before* searching the house. (*See* R. 53). The bases for this challenge have evolved somewhat in the course of briefing.

In Dixon's Motion to Suppress, he asserts that there are indications that the purported affidavit and search warrant, both dated September 22, 2019 (*id.* at Page ID 171-77), were not created until much later than the September 22, 2019 search of the house (*id.* at Page ID 166).[4] Specifically, he offers three reasons to doubt the validity of the warrant: (1) the warrant, affidavit, and return were never filed in the Kentucky state court case in which the warrant was authorized;[5]

---

[3] Under a more technical view, Dixon can be said to be challenging the probable cause allegations by arguing that they fail because they are contained within an invalid warrant.

[4] As will be discussed later, although Dixon's Motion to Suppress states that the search of the house occurred on September 22, 2019, he later suggests that it occurred on September 21.

[5] To this end, Dixon provides a certification from the Madison District Clerk, stating that it has reviewed the file in the purported underlying state-court criminal case, 20-F-139, and certifies that no search warrant or affidavit is contained in the record of that case. (R. 53, Page ID 167).

(2) the warrant and affidavit were not produced in discovery in the underlying state case and there was a significant delay in their production in this case; and (3) "the warrant and affidavit bear indicia that they are not authentic," evidenced by the use of differing fonts and Xs where one would expect checkmarks. (*Id.* at Page ID 163-65). Based on these circumstances, Dixon reasons that "there is a legitimate basis to conclude that the warrant may not have been created until on or near June 8, 2020," the date the Government produced the warrant, affidavit, and return in this federal criminal case. (*Id.* at Page ID 166).

Dixon's Reply in support of the Motion to Suppress raises additional questions about the validity of the warrant:

> Since the Motion was filed, a critical additional fact has come to light. The discovery CDs provided by the Government contain the search warrant videos, and these electronic video files were last modified on September 21, 2019. See attached screenshot of discovery file for search warrant video. Yet the search warrant itself, according to the Government, was not obtained until September 22 – *one day after the video was made*. R. 67. The September 21 file modification date on the electronic file metadata suggests that law enforcement searched the house before obtaining a warrant, and later prepared – or falsified – the requisite documentation in an attempt to cover its tracks.

(R. 72, Page ID 254). Accordingly, even though Dixon states in his Motion to Suppress that the search of the house occurred on September 22, he now suggests in his Reply that it occurred on September 21. (*See also* R. 78, Page ID 273 ("The search warrant itself was not obtained until September 22, the following day. Thus, any search of the residence on September 21 was an unconstitutional warrantless search, and the fruits thereof must be suppressed.")). Moreover, Dixon also points to the copy of the search warrant return (R. 67-1, Page ID 235) that the Government attached to its Response, noting that it contains "a handwritten number as the final digit" of the case number (R. 72, Page ID 253).[6] Dixon considers this to be suspicious because

---

[6] The number in question is purportedly a case number assigned by the Kentucky State Police, 33-19-0315.

3

the search warrant return (R. 53-5, Page ID 178) that the Government provided to him "had no handwritten digits in the case number" (R. 72, Page ID 253).

For its part, the Government responds that Dixon's alleged irregularities can be readily explained or are trivial. It points to a stamp on the face of the warrant from the Madison District Court as proof that the warrant was filed. (R. 67, Page ID 228). While it admits that the warrant and affidavit were not initially produced, it characterizes this as a simple "oversight." (*Id.* at Page ID 226). It does not offer a substantive response to explain the font and checkmark allegations, calling them trivialities. (*Id.* at Page ID 225). Nor does the Government respond to the suspicion Dixon casts on the search warrant return for containing a handwritten case number on one copy of the return and a typed number on the other copy. As for the September 21 date on the video file, the Government states that a meeting occurred between Government counsel, defense counsel, law enforcement involved in the search, and the founder of a forensic computing firm, during which the officer who created the video file explained that the camcorder used displays a date on the video file that "oftentimes corresponds with the date the recorder was last charged." (R. 82, Page ID 284).

Because Dixon requested "a hearing so that testimony and evidence [could] be received . . . to determine the authenticity and validity of the purported search warrant," the Court directed the parties to brief what standard should be used to determine if an evidentiary hearing should be held and provided counsel with a case to review, *United States v. Parks*, No. 1:08-CR-58, 2009 WL 1617010 (E.D. Tenn. June 9, 2009). *Parks* concluded that the standards set forth in *Franks v. Delaware*, 438 U.S. 154 (1978), applied in determining whether to grant an evidentiary hearing on a defendant's challenge to the validity of an arrest warrant at the time of the defendant's arrest.

4

*Parks*, 2009 WL 1617010, at *6. Both parties filed supplemental briefing, with Dixon advocating that *Franks* does not control and the Government advocating that it does. (R. 78, 82).

Since supplemental briefing, Dixon himself (not through counsel) filed a document containing numerous allegations apparently aimed at challenging the validity of the search of the house in question. (R. 83). The Court ordered Dixon's defense counsel to submit a notice filing, explaining the significance of Dixon's filing. (R. 88). Dixon's counsel did so, stating that Dixon's intent was to attack the validity of the search and provided a summary of the general points that he understood Dixon to be making. (R. 89). Counsel also attached roughly 40 pages containing additional allegations from Dixon attacking the validity of the search. (R. 89-1, *see also* R. 90). Because Dixon made clear his desire to offer *pro se* arguments in support of his Motion to Suppress in addition to the counseled arguments, this Court entered an order concluding that Dixon was not entitled to hybrid representation, directing him not to make filings in addition to those made by counsel, and permitting the Government the opportunity, if it desired, to respond to Dixon's *pro se* arguments. (R. 93). The Government filed a response on January 13, 2021, arguing that Dixon's *pro se* arguments were all meritless. (R. 94).

**II.   ANALYSIS**

The Fourth Amendment guarantees the right of the people to be secure in their houses against unreasonable searches and seizures. U.S. Const. amend. IV. The Supreme Court has described the right to privacy in the home as follows: "The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home. . . ." *Payton v. New York*, 445 U.S. 573, 589 (1980). Because "the Fourth Amendment has drawn a firm line

5

at the entrance to the house," generally, "that threshold may not reasonably be crossed without a warrant." *Id.* at 590.

Factually, Dixon agrees that a physical search warrant exists in his case, however, he argues that it is invalid because "the requisite documentation" was "later prepared – or falsified" so that law enforcement could "cover its tracks" in searching "the house before obtaining a warrant." (R. 72, Page ID 254). Legally, Dixon reasons that, if "the house was indeed searched without a valid warrant, then the search violated [his] rights under the Fourth Amendment, and all fruits of that unconstitutional search must be suppressed." (R. 53, Page ID 166). Accordingly, Dixon's Motion to Suppress is critically tied to a showing that the search warrant in this case was in fact invalid at the time of the search. For the reasons given below, the Court concludes that Dixon fails to show that he is entitled to an evidentiary hearing or that the search warrant is invalid.

      A.     *Franks* **Applies in this Case**

As the Supreme Court noted in *Franks*, "a presumption of validity [exists] with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. However, if the defendant makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that "the allegedly false statement is necessary to the finding of probable cause," the Court must hold a hearing at the defendant's request. *Id.* at 155-56. The *Parks* case (noted above) concluded that the preliminary-showing standard of *Franks* applied under factual circumstances similar to this case, where a defendant challenged the existence of an arrest warrant at the time of his arrest. *Parks*, 2009 WL 1617010, at *6. However, Dixon argues that this Court should, unlike *Parks*, conclude that *Franks* does not apply in determining whether he is entitled to a hearing on his allegations:

6

> Upon review, *Parks* does not govern the present case. In *Parks*, no motion to suppress had been filed. *Id.* at *4. Even if such a motion were to have been filed, the *Parks* court mistakenly focused on the standards set forth in *Franks v. Delaware*, which apply only where the defendant alleges that false statements have been included by the affiant in the warrant affidavit. 438 U.S. 154 (1978). Mr. Dixon has not taken a position here on whether the averments in the search warrant affidavit are false. Rather, he has challenged whether the warrant itself was authentic and lawfully obtained. Both *Parks* and *Franks* are therefore inapplicable.

(R. 78, Page ID 273). The Court finds none of these arguments convincing.

First, while the defendant in *Parks* had not yet filed a motion to suppress, the *Parks* court directed the defendant's attention to *Franks* should he decide to file a motion to suppress. *Parks*, 2009 WL 1617010, at *6 ("Therefore, defendant may, within SEVEN (7) DAYS of entry of this order, file a motion to suppress on the grounds he has previously articulated in the April 3, 2008 hearing. Defendant's careful attention is again invited to *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L.Ed.2d 667 (1978) for the requirements which must be met in order to merit an evidentiary hearing on the validity of a search warrant."). Moreover, after the above *Parks* opinion was issued, the defendant filed a motion to suppress, both sides briefed the issue of whether the defendant was entitled to a *Franks* hearing, and the Court granted a hearing. *See United States v. Patrick Parks*, No. 1:08-cr-58-CLC-CHS-1 (E.D. Tenn. May 5, 2010) (R. 44; R. 45; R. 50; R. 51; R. 52 of *Parks*). Accordingly, to the extent that Dixon seeks to distinguish *Parks* as procedurally off point, he is incorrect.

Second, Dixon's assertion—that he "has not taken a position here on whether the averments in the search warrant affidavit are false . . . [but] has challenged whether the warrant itself was authentic and lawfully obtained"—appears to be more grounded in word choice than substance. Put simply, Dixon has alleged lies and falsehoods by law enforcement throughout his briefing. (*See* R. 72, Page ID 253, 254 ("Either the search warrant magically disappeared from the court's files, [or] the Government's case agent is *lying*"; "The September 21 file modification date

7

on the electronic file metadata suggests that law enforcement searched the house before obtaining a warrant, and later prepared – or *falsified* – the requisite documentation in an attempt to cover its tracks.") (emphasis added). It may be that Dixon technically alleges only that *the affidavit and warrant documents themselves* were "falsified" due to the timing or circumstances of their creation but that he has taken no position on whether the averments *in support of probable cause* in the affidavit are false. On this point, Dixon argues that there is "established precedent" that mandates a hearing "if the motion [to suppress] is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." (R. 78, Page ID 273 (quoting *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019)).

True, this is the general standard for granting an evidentiary hearing, which is aimed at ensuring that actual contested *issues of fact* exist that impact the warrant's validity as opposed to only legal issues being involved, which do "not require a hearing." *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006). However, certain "procedural protections" exist "for a defendant who claim[s] that the affidavit supporting the probable cause of a search warrant contained intentional or reckless falsehoods," which, as will be discussed, is substantially similar to Dixon's claim that law enforcement falsified the affidavit and search warrant. *Id.* at 574. And with these "procedural protections" come a special standard. This brings the Court to *Franks,* its general intent, and the extent of its reach.

*Franks* addressed under what circumstances, if ever, a defendant could "challenge the veracity of a sworn statement used by police to procure a search warrant." 438 U.S. at 155. This issue arose because the Delaware Supreme Court had concluded that a defendant could never attack sworn statements contained in a search warrant affidavit. *Id.* at 160. While the Supreme

8

Court determined that there was "a presumption of validity with respect to the affidavit supporting the search warrant," it rejected a complete ban on challenging the falsity of statements in an affidavit. *Id.* at 171. Instead, it developed the now-familiar *Franks* standard for obtaining a hearing to challenge allegedly false statements:

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Id.* at 171. From this instruction, it is clear that affidavits are presumed valid but that a mechanism exists to challenge allegedly *false statements* made in support of probable cause. But what if the statements supporting a probable cause determination in the affidavit are not *directly* at issue; does *Franks* apply?

Turning back to Dixon's argument, he believes that *Franks* reaches no further than its precise circumstances, e.g., to the allegedly *falsified* affidavits and warrants here: "[*Franks*] appl[ies] only where the defendant alleges that false statements have been included by the affiant in the warrant affidavit." (R. 78, Page ID 272). But it is not persuasive to simply argue that a rule from a case extends no further than the precise factual context in which it was crafted. And with *Franks*, Dixon's basic proposition is easily disprovable. For example, while *Franks* only addressed "false statements," it also applies to omissions of information. *See Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998) ("While this case does not involve any allegedly false statements, we have previously held that the *Franks* doctrine applies to omissions of information from affidavits as well.").

9

Moreover, as discussed, at least one court, *Parks*, has indicated that *Franks* applies not only to false statements in support of a probable cause determination but also to allegedly non-existent warrants. This makes sense in considering the intent behind *Franks*, which was aimed at combatting the "specter of intentional falsification" by allowing a party to seek a hearing so that law enforcement could not deliberately mislead a judge into establishing a basis for a warrant based on deliberately falsified allegations. *Franks*, 438 U.S. at 168; *see Mays*, 134 F.3d at 816 ("*Franks* recognizes that information an affiant reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made.").

While *Franks* specifically dealt with falsified allegations to establish probable cause, this Court sees no good reason to conclude that the intent of *Franks* does not also apply to entirely falsified affidavits and search warrants. After all, if, as Dixon alleges, law enforcement created falsified warrant documents in the first instance or obtained the documents only after the search already took place, "the hearing before the magistrate . . . will [not] suffice to discourage lawless or reckless misconduct." *Id.* at 169. With the heart of *Franks* being so implicated here, the Court concludes that a falsified affidavit and warrant are just another example, and perhaps an even more worrisome one, of the "specter of intentional falsification" that *Franks* afforded a procedural mechanism to uncover. Accordingly, as Dixon's Motion to Suppress seeks an evidentiary hearing to receive testimony and evidence on the "authenticity and validity of the purported search warrant" based upon allegations that it did not exist when the search of the house took place, the Court concludes that the *Franks* standard applies.

  **B.**  **Dixon's Fails to Meet the Required Showing of *Franks***

Having determined that *Franks* applies, the Court now considers whether Dixon has shown that he is entitled to a *Franks* hearing. He has not.

Critically, *Franks* requires not only "allegations of deliberate falsehood or of reckless disregard for the truth" but also requires that "those allegations *must* be accompanied by an offer of proof." *Franks*, 438 U.S. at 171 (emphasis added). While Dixon has alleged that the affidavit and search warrant are false for the reasons identified above, he has not made an offer of proof as required. Specifically, under *Franks*, "[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id*. With one exception discussed below, Dixon has offered no affidavits or otherwise reliable witness statements in support of his allegations, nor has he explained why he has not provided such. *See United States v. Marlowe*, 993 F.2d 1548 (6th Cir. 1993) ("Since Marlowe did not make specific allegations regarding the falsity of the affidavit and did not make an offer of proof, the district court was correct to deny Marlowe a *Franks* hearing."). For example, while Dixon asserts that the use of differing fonts and Xs where one would expect checkmarks on the warrant documents suggests "that they are not authentic," he provides no affidavit or other reliable witness statements in support of his assertion. (R. 53, Page ID 163-65); *see United States v. Reynolds*, 534 F. App'x 347, 358 (6th Cir. 2013) ("Despite Reynolds's assertion as to the seriousness of the alleged irregularities, in his original request for a *Franks* hearing filed on April 10, 2009, he identified only one allegedly false statement and argued only that he would show that the statement was false. Such bare assertion of falsehood is insufficient to constitute a showing, let alone a substantial preliminary showing, either that the statement actually was false or that it was made intentionally or with a reckless disregard for the truth."); *United States v. Kelley*, 459 F. App'x 527, 532 (6th Cir. 2012) ("Kelley alleged that the affiant's statement that 'Kelley, Akins, Lewis and their associates have

11

extensive experience trafficking drugs and have numerous arrests for drug violations' was false as to him. However, this claim was not supported by an offer of proof.").

Dixon has arguably made an offer of proof in one instance. As part of his attempt to cast doubt on the validity of the search warrant, Dixon asserts that the warrant and the affidavit were not filed of record in the underlying state case as required by Kentucky Rule of Criminal Procedure 13.10(3), which provides as follows: "A copy of the search warrant and supporting affidavit shall be retained by the judge or other official issuing the warrant and promptly filed with the clerk of the court to which the warrant is returnable." (R. 53, Page ID 163). To support his assertion, Dixon has provided the certification of the Madison County Clerk dated June 11, 2020, stating as follows: "I hereby certify that I have reviewed the contents of the file *Commonwealth v. Lavone G. Dixon, Jr.*, Case No. 20-F-00139, and there is no search warrant or affidavit in support of search warrant in the Court's records at the office of the Madison Circuit Clerk." (*Id.* at Page ID 167).

While the lack of the search warrant and affidavit in the record of the state court is *some* indication that the warrant and affidavit never existed, it is not enough, on its own, for Dixon to meet his "heavy burden" to make the substantial preliminary showing under *Franks* that the warrant and affidavit in this case were falsified or obtained after the search of the house. *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). Put simply, the absence of the warrant in the state court record is not so suggestive of foul play in light of reasonable other alternative explanations. For example, the Clerk could have neglected to file the documents due to a backlog of activity or the documents could have otherwise not yet made their way to the Clerks' Office for some reason or another. *See United States v. Willoughby*, No. 3:10 CR 431, 2011 WL 6029074, at *5 (N.D. Ohio Nov. 15, 2011), *report and recommendation adopted*, No. 3:10 CR 431, 2011 WL 6028911 (N.D. Ohio Dec. 5, 2011), *aff'd*, 742 F.3d 229 (6th Cir. 2014) (concluding that

defendant was not entitled to a *Franks* hearing, in part, because there was "a reasonable explanation" for a discrepancy in the affidavit); (R. 94-4, Page ID 443).

Lastly, the Court concludes that it is appropriate to briefly address Dixon's *pro se* filings in support of his Motion to Suppress. (*See* R. 83; R. 89-1). First, as noted in this Court's prior Order, Dixon is not entitled to hybrid representation and thus any court filings must be made through his counsel. (R. 93). However, even if the Court were to consider Dixon's *pro se* filings in support of his Motion to Suppress, it concludes that none of his various arguments weigh in favor of granting a *Franks* hearing or suppressing the evidence seized by the search of the house.

### III. CONCLUSION AND RECOMMENDATION

Dixon's failure to convince that *Franks* does not govern or to meet the required showing of *Franks* has left him without any evidence to prove his assertions that the affidavit and search warrant in this case were "later prepared [] or falsified." (R. 72, Page ID 254). Accordingly, there being no basis to conclude that Dixon's Fourth Amendment rights were violated by an invalid search of the house, **IT IS RECOMMENDED** that Dixon's Motion to Suppress (R. 53), which Motion co-Defendant Tiffany Thompson has joined (R. 54), be **denied**.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated this 12th day of February, 2021.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\Orders\criminal cov\2020\20-2-DLB-CJS R&R mtn to suppress.docx